The government liable, and including in its damages award, $1.33 million in what the court called interest offset damages. With respect to liability, this case is distinguishable from the tax benefit cases decided by this court, Sentex, First Heights, and First Nationwide, because only in this case did the acquirer, at the time of acquisition, have actual and specific knowledge that future legislation could eliminate any available deduction for reimbursed covered asset losses. Why does that matter? I didn't see in the precedent that actual knowledge was a decisive factor here. I would agree with you, Your Honor, but in and of itself, it would not be a decisive factor. However, in combination with the other two factors, it does make this case distinguishable. The second factor is that only in this case did the acquirer request, in writing, indemnification from the government to protect it in case such targeted legislation was enacted. And the provision suggested was not included in the final agreement? That's correct. And that proves what? That proves that it basically is significant because it's vitally important in distinguishing this case from Sentex, because it demonstrates that local could not have had a reasonable expectation that it would be protected in the event that targeted legislation was passed. Why not? Because it asked for indemnification. Yes. It specifically knew the risk that it would happen. Yes. It knew, once it didn't receive it, that it was at risk of this occurring. Well, you're assuming, it seems to me, that by asking for indemnification, the view of the bank was that without indemnification, there was no protection and no ability to that although indemnification would be the perfect, ideal, complete, obvious, formal remedy, that the bank also realized that they would have remedies under the formal and implied contract, even in the event the indemnification request was rejected. Because I think under the record we have in this case, when they asked for it, that would be completely speculative. It was unlike the Sentex case. Well, wait a minute. You're asking us to speculate on their state of mind based on the fact that they proposed indemnification and didn't get it. So why am I not allowed to speculate as to what their state of mind was on fallback remedies if indemnification was not agreed to? Well, for example, their tax counsel warned them after they were unsuccessful in obtaining the indemnification that they requested. And they said right in that letter to them that if the tax law changes, including targeted legislation, we could be in trouble. There was no statement by the tax counsel. They don't worry about it because of the implied covenant. Of course you could be in trouble, but being in trouble doesn't mean without any hope of recovery. Well, I mean, that's true. You're asking us to read an awful lot into the tax counsel's letter, it seems to me. Well, I think if you look at Sentex, it's premised upon Sentex's reasonable expectations. And based upon the circumstances that existed there, the court concluded it was reasonable for Sentex to expect that it would not be the victim of targeted legislation that took away the benefit. Why isn't the same true for any banker encouraged by the government to bail out a failing thrift? Because in this case, they understood that they had to get indemnification. That's why they asked for it. They were simply unable to get it. They then could have turned and said, well, we tried to protect ourselves with this indemnification. We couldn't get it. Let's turn our back on the deal. Instead, the conclusion they came to, A, is we have these other benefits under the deal that make it worthwhile, even if this targeted legislation were passed. Or more likely, B, we don't think they will pass the targeted legislation. Why isn't there a C in there that even if they pass targeted legislation, we have other legal remedies that might work? If there was some evidence that that thought process went through, I think it would be a different case. There's no evidence whatsoever. You can look through all the records in this case. Nobody mentions the EBITDA. I'm not addressing what their actual state of mind was, because obviously I don't know. But it seems that the test would have to be an objective test of what would a banker in the shoes and circumstances of local have reasonably expected. And you're saying they couldn't possibly have expected that there would be any remedy because the requested indemnification was not agreed to. I don't see what your basis is for saying that, as opposed to somebody else maintaining exactly the opposite. Well, I think you have to look at it under the circumstances. Of course. And the reasonable expectation under the circumstances is not that they would have this implied covenant to protect them. I mean, that's just... Why not? Any good government contract lawyer knows that there is an implied covenant, always inherently an adjunct of the written agreement with the United States. So why wouldn't a good lawyer or a good business executive exactly have the implied contract of fair dealing and good faith in mind? I would think that if they were proposing indemnification, they didn't think they had that protection. If they thought they did have that protection, they would have said... We have internal letters to the board of directors, and there's no statement in there that said we don't really need this anyway, because we're protected by the implied covenant. They said we need this to protect ourselves. And here's what we need to ask for. And if we don't get it, we're at risk that we're going to lose benefits. Why would they be at risk of losing benefits if the legislation was passed? Because if indemnification is in the agreement, there can't be any argument. If you have to file a breach of contract lawsuit, obviously there's an argument. The other side is not likely to agree that there was a breach. They're going to argue that there wasn't a breach. Maybe you'll win, maybe you'll lose. High risk, litigation costs, delay, problem. So, of course, automatic right to payment through an indemnification clause is a far better weapon to have at your disposal if you can get it. But the idea that if they didn't get that, they knew they had nothing, to me, doesn't follow. Mr. Austin, why don't you tell us about the interest issue? Certainly, Your Honor. This interest issue can get complicated, Your Honor. So I think the best way to look at that... It's of great interest. It's of great interest. It certainly is, Your Honor. If the government's counterclaim was an independent claim, there is no question that the government would be entitled to receive both the $20 million principal on the counterclaim and the full $7.7 million in prejudgment interest it did receive on its counterclaim. Similarly, if local's primary claim had no counterclaim against it and was the only claim in this case, it is undisputed by local and the trial court that local would not be entitled to prejudgment interest on its $4.5 million or any claim. You don't accept the interest on the balance theory. Well, that's involved in a case. First of all, we don't think it applies here. However, there's no sovereign immunity involved in those cases. And I think when you look at the Shaw case, and particularly look at Justice Blackmun's opinion in Shaw and compare it to his opinion in Walsh v. Perina, you can see that the focus is completely different on those interest on the balance cases. In the interest on the balance cases, what the court says is we have to look at equity and fairness in deciding how to determine prejudgment interest. And in equity and fairness, probably this case would go the other way. It would go the other way because we're getting prejudgment interest on our counterclaim. They're not getting it on their claim. That would seem unfair. But that's a question for Congress to decide. And so far, Congress has decided that they're not entitled to prejudgment interest. The difference is on these interest on the balance cases and these set-off cases that the plaintiff relies on, that there's no sovereign immunity. Shaw doesn't apply. There's no analysis as to whether or not it's the equivalent to granting them prejudgment interest on their claim. And if you look at the Delaware Tribe of Indians case, which preceded Shaw but was cited by Shaw, the court made it very clear that the court cannot do indirectly what it cannot do directly. And if the effect of what they're doing is to grant them prejudgment interest on their claim, they're not entitled to it. And our position here is the effect of what the trial court did is to grant them prejudgment interest on 4.5 million dollars. Do you have authority that an effect test governs? Yes, under the Delaware Tribe of Indians case. That's what the court said. The court said when you look at sovereign immunity, you look at the effect of what happened. And in that case, what happened was one of these Indian cases, and the United States had underpaid under one of the treaties. And we owed them a certain sum of money that they did not get until some 80 years later. And in the course of that occurring, what happened was we gave these gratuity payments. I thought here we're talking about assessing the amount of damages. Well, they do make a claim that this is interest on damages. It's not. It's simply giving them prejudgment interest on their claim. And they're doing it in the form of reducing our prejudgment interest. And our position, if these claims were separate, there's no question that the outcome would be. We're entitled to prejudgment interest, and they're not. And they're saying just because they're together, we're not entitled to our prejudgment interest. That's the effect of granting them prejudgment interest on their claim. And under sovereign immunity principles under Shaw, they're not allowed it. I'm running into my bottle top. So the law is unfair? I'm not saying the law is unfair. I'm simply saying that if you believe that you should have prejudgment interest against the government, you would consider it unfair. But that's an argument that has to be made before Congress. Shaw was decided in 1986. Congress hasn't decided to amend it. And I would add, I don't think it's unfair because, you know, we're doing big protests in our office every day. Plenty of people want to contract with the government and get the profits from the contract. And they know should it come to damages and they have a trial that they're not going to get prejudgment interest. Thank you. All right. Thank you, Mr. Austin. Mr. Yalowitz. May it please the court. Welcome back. One more Winstar case. It's good to be here. What say you in response to Mr. Austin? I'd like to begin by talking about a case called Standard Steel Car, which was from this court's predecessor. It was a war contracts case. And in the course of producing gun carriages, the contractor and the government had a long account of disputes. Who owed who what money? Claims and counterclaims. The case is discussed in my gray brief, Standard Steel Car. And in the course of deciding the case, the court claims held that the contractor owed less money than the government. And so therefore, the contractor was entitled to a net reward. The government came back after the case was decided and said, well, we want interest on our claim because we are, even though it was less than what we owed the contractor, we're still entitled to interest because of commercial contract. And the court said, no, you're not. They said ordinary rules of contract law apply to the government when it is making a claim against a contracting party. And that's what we have here. The government is making a claim for unpaid tax benefits under Section 9 of the Assistance Agreement and is asking for and received a payment in settlement with rights reserved, $7 million in interest, for the delay of payment of its $20 million. The claimant for interest here is the government. And in Standard Steel Car, the court said the government is governed by regular contract rules. Isn't Mr. Austin correct, though, that the effect of this is an award of prejudgment interest? No, absolutely not. Unconditionally, he is completely incorrect because the commercial rule in every case, as it was in Standard Steel Car, is that when a person is entitled to interest, they're entitled to the interest on the net amount of their claim and not on the gross amount. And so what we have here is the government demanding money. And the question is, are they entitled to interest on $20 million or are they entitled to interest on the $16 million? And I don't think there's any dispute that local properly exercised a set-off, that local correctly invoked its rights of self-help. And so from the moment of the set-off back in 1994, the government was never entitled to $4.5 million. Now they dispute that, and they say we're really entitled to the $20 million. And if they were correct, they'd be entitled to their $7 million. But the substance of it is that the government is asking for interest on its claim. And the question is, how much interest is it entitled to get? And every court that has confronted this kind of situation, not just Standard Steel Car and not just Enright, which was also a court of claims case, but more modern cases throughout the nation, have said you effect the set-off and then you compute interest on the balance. That's the normal commercial rule. And so there's no reason to think that there's a special sovereign immunity that allows the government to charge interest and keep interest on money it was never entitled to begin with, which is what the effect of agreeing with the government is. You have your own effects test, but it's a little bit different than Mr. Austin. Fair enough. I agree that we have to look at the substance of it. And it can be called – there's sort of a semantic thing. We call it Billy Goat or a horse. But that's not really helpful in deciding what the substance of it is. And the substance of it is, are you charging interest on money that you were never entitled to collect? And if the answer is yes, then you shouldn't be allowed to keep it. And I don't think there's any doubt about the keeping part. This court said so in Doty that you can pay interest under protest and claw it back, which is what we're asking to do. The trial judge did make one misstep, which we would like the court to correct and modify. And the court has the power under 20 U.S.C. 2106 to make the modifications. We don't have to suffer the continued delays of going back and remaking proceedings, cases in its tenth year. The interest on the balance rule says that from the moment that you effect the setoff, you're entitled to keep the credit of the money that you set off. And everybody in the trial court agreed. The government agreed. The government's experts agreed that if you compute interest on the balance from the moment of the setoff, then the right number is 2,000,002 rather than the 1,003 that the trial judge awarded. And the trial judge didn't adopt the 2,000,002 because he said, I don't want to give local more than it would get as prejudgment interest. So if they were entitled to prejudgment interest, they'd only be entitled to the 1,003. And I don't want to give them more than that, so I'm going to trim the interest down. But there's no sort of legal basis for that. There's not a reasoned link between the 1,003 and any legal standard. Everybody agrees that if you apply interest on the balance, you get to the 2,000,002. And in fact, the expert who calculated prejudgment interest for the government or calculated the setoff for the government, I asked him on deposition, are you using the interest on the balance method? And he said, no, I don't have to. I'm using, I think he said the converse or the inverse or some, the obverse of the interest on the balance. It wasn't inverse, though. No, no, it was obverse. Well, you know, if the court has, I guess I should say that there's one other thing that I should say about liability. I think the court has the picture clear. There is some testimony in the record. It's quoted on pages 10 and 11 of my red brief about what the expectations were of the local. And they line up really quite clearly with the expectations of syntax, sort of item by item. And the one sort of ironic thing here is that the government's response to the markup of local, and they said we'd like these indemnities. The government came back and they said, well, there are two kinds of comments you've made. Some are material or germane or relevant or something. We're not going to take those because we want everybody to be uniform. And others are immaterial, and we're not going to take those either because they're immaterial. So their explanation to local of why they weren't agreeing to any of the changes was we want all of the contracts to be uniform. So now here we are 18 years later, and the government is standing in the well of the court saying, well, because we told local we want all of the contracts to be uniform, local should lose even though everybody else won. So that's the sort of legislative history of the contract that we have. Chief Judge, I reserve one minute of rebuttal time. Unless the court has other questions, I'm happy to sit down now. Well, I'd like you to address the Shaw argument. Sure. Shaw is a – first of all, Shaw against the Library of Congress doesn't teach us anything about interest on the balance. Shaw was a Library of Congress employee who brought a civil rights claim, and the district judge awarded him attorneys' fees with a delay factor for the attorneys' fees, sort of a gross-up for compensation for delay. And Justice Blackmun correctly said compensation for delay is interest, and we can't award interest to plaintiffs. In the course of discussing that, he quoted a sort of a summary from the Miss Guerrillo case, which had been kind of an exegesis of all these cases, and in fact they did use the word offset. And it's true, if an offset is in effect prejudgment interest, it's not allowed. That's what the court said in the Delaware Trot case. And in that case, as Mr. Austin was explaining, there was a right of the government to credit for certain gratuities. They were called gratuities, you know, subsistence payments that the government had made to the Indians over the years. And the Indian Claims Commission said, well, we're not going to give the government credit for those gratuities except to the extent that they exceed a 5% interest rate, because we assume that the Indians would have been able to invest the funds and earn interest on them. So in that case, the court was crediting prejudgment interest as measured by the Indian's claim, not as measured by the government's claim. And so the case is not at all in the same pasture. So that sort of unusual fact pattern made its way into the Miss Guerrillo case, and then made its way sort of indirectly into some reasoning of Justice Blackmun and Shaw. But he doesn't address interest among the Indians. What's your categorization? Are you saying it's a dicta that has no connection to the holdings of Shaw, or are you saying it is part of the holdings, but it's not relevant to the case before this panel? I think the latter. I think it's reasoning that supports the holding. The holding of the case is that a civil rights plaintiff is not entitled to a delay factor in attorneys' fees. That's the holding of the case. The reasoning of the case says, whether you call it a delay factor or something else, you have to look at the substance of what it is and whose claim it is and how it's measured. And so it's not wrong. It's just not relevant to this case. All right. Thank you. Thank you, Mr. Austin. Rebuttal. Thank you. I want to begin by addressing the recross appeal, which deals with the issue of whether, assuming there is no sovereign immunity and assuming the plaintiff is entitled to interest offset, whether the trial court correctly calculated it. And we believe that the trial court did correctly calculate it. And the interest on the balance case is that the plaintiff's site, we believe, supports the trial court's evaluation and not the plaintiff's. And that's because what the trial court did was, and we believe correctly, look at when local incurred damages. And it incurred its damages not when it lost the deduction but when it had to pay extra taxes because it lost the deduction. As I know the court is aware, you can lose a deduction but not have the income to take it. You have a net operating loss that goes on your income tax returns. And then when you do have the income, that's when you actually have the ability to deduct. Are you saying that the judge awarded the full interest on the balance for the relevant time period as opposed to Mr. Yalowitz, who I think characterized the interest award as having been capped because of an extraneous equitable notion? Well, what the trial court did was this. The local argues that this is a very simple calculation to make. You simply take the $20 million, you subtract the $4.5 million, and you get an interest on the difference. The trial court rejected that because he felt that correctly that would result in a windfall to the plaintiffs. What the trial court did is that I'm going to look at the timing of everything.  Local didn't incur its damages on the date of the breach. Local incurred its damages when the breach led to the fact that it paid excess income tax. And we believe the trial court was correct in that. And if you look at the cases, they all look at when it's determining how to calculate the interest when they were entitled to it. As the trial court pointed out, if you take local's argument to its logical conclusion, not only would local receive a rate of prejudgment interest on what we believe is prejudgment interest on its claim that was higher than it would have received under straight prejudgment interest. That is the effect. But in effect, we earned, for purposes of our prejudgment interest on our counterclaim, it was based upon the timing of damages to the government from their breach. And now you're giving local a greater rate than that. So you're reducing our prejudgment interest by a greater rate on their claim. So they received not only more than a prejudgment interest rate, but more than we received on our prejudgment interest. Do you want to say anything further on your direct appeal? Only that in the Shaw case that it does talk about interest on the balance. It doesn't use that term, but it indirectly talks about that when it says you look at the effect, whether it's called offset or whether you call it something else, you look at the effect. And therefore, we believe it does talk about interest on the balance because interest on the balance doesn't look at the effect. And Shaw specifically said policy considerations do not matter. What matters are, is it the effect of interest? So my time is out. And to really reiterate, we believe there should be no damages because the government is not liable. With respect to interest offset, we believe that the trial court should not award any interest offset. But assuming that you get around the sovereign question, the trial court's calculation of the interest offset was correct. Thank you. Mr. Yalowitz, rebuttal on the cross-appeal. Thank you, Your Honor. With regard to whether it should be $1.3 million or $2.2 million, everybody agrees that if local was allowed to affect the set-off as of the date of the breach,  and in Franconia Associates, the Supreme Court— It's a matter of economics. Why isn't the date of the economic injury the better date rather than the date of the breach that led to an economic injury? Well, I think the right date is the date of the set-off. And here, local affected the set-off at the earliest possible time after the breach to merge. What happened here—and the government is sort of taking opportunistic advantage— local incurred all of its damages very early on, within a year or two of the breach. Local then experienced net operating losses in 1997 and 1998. And under the tax code, local was allowed to carry those losses back into earlier years. And it did. And so its damages went from being lost cash to lost tax assets, net operating loss, carry forwards, alternative minimum tax carry forwards. Perfectly recognizable and cognizable damages as the trial judge held in First Heights. Then, in later years, local experienced further earnings, and the consequence was that those tax assets reverted back to lost cash. Lost tax assets, lost cash. But all the way through, local had incurred damages. The covered asset losses had been incurred and reimbursed, ending in 1993. So everybody knew what local's damages and losses were. The only question was whether they were in the form of cash or other lost tax assets. But I think the important point is not when they would have been out of pocket in cash, looking back in hindsight. The important question is, practically, as a practical matter, once you affect a set-off, you have to keep the money. That's what the Associated Companies from this court says. And it makes sense. You can't affect the set-off, give the money to the party, ask them for it back. The set-off has to be permanent. And the Supreme Court has taught that you're allowed to accelerate the performance upon a breach. Well, why are the other tax rights of local determinatives when the breach was the enactment of the Guarini Amendment? I'm not sure I'm following on this question. Well, I understand Mr. Austin is saying that the Guarini Amendment resulted in local having to pay more income tax than it otherwise would have. And that, therefore, the harm that the Guarini Amendment caused didn't happen until the tax liability was paid, as opposed to the day that Guarini itself was enacted by the Congress. And you don't seem to be addressing that. Well, let me address it directly, Your Honor. Mr. Austin's expert disagrees with that, and I was flipping through the brief to find a footnote. I don't have it at the top of my head. But the facts are that immediately, within a year or two of the breach, all of the damages, all of the injury that locals suffered were suffered. And they took two forms. There was about $6 million of overpaid taxes, which is cash out of pocket. And then there was an AMT credit carry-forward that they would have had on the books and reflected as an asset on their balance sheet, but for the breach. So right away, I'm not saying on the day of the breach, but within a very prompt period of time, a year or two, all of the damages that they ever suffered were, in fact, incurred. And so as a factual matter, an undisputed factual matter, this is an admission from the government's expert, we would say that to the extent that economics matters, we satisfy the economic test of having the damages incurred right away. All right. Thank you. We thank you. Both counsel will take the case under advice.